# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

Salvatore Parente, Dane Cash,
Bradley Knight, and Garry Yalung,
for and on behalf of themselves
and other persons similarly situated,

Court File No.

Plaintiffs,

**COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

v.

Global Finishing Solutions, LLC,

Defendant.

Plaintiffs Salvatore Parente, Dane Cash, Bradley Knight, and Garry Yalung, for themselves and on behalf of other persons similarly situated / all Opt-In Plaintiffs (collectively referred to hereinafter as "Plaintiffs"), for their complaint against Defendant Global Finishing Solutions, LLC (referred to hereinafter as "GFS"), state and allege as follows:

## JURISDICTION AND VENUE

1.      This is collective and individual age discrimination case.  GFS engaged in disparate treatment of older employees with regard to the terms and conditions of employment and termination. GFS engaged in a pattern or practice of age discrimination in connection with terminations, opportunities for open positions, and hiring.

2.     Plaintiffs seek relief under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.     Plaintiffs seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, relating to the enforceability of a purported release and waiver signed by many of the Plaintiffs.

4.     This action is brought under the ADEA, 29 U.S.C. § 216(b) on behalf of the Plaintiffs named above and all persons similarly situated who choose to opt in under procedures applicable to age discrimination claims.  Declaratory relief is sought under 28 U.S.C. § 2201.

5.     Because this action arises under the ADEA, 29 U.S.C. § 621 *et. seq.*, jurisdiction is proper under 28 U.S.C. § 1331.

6.     All conditions precedent to the filing of this lawsuit have been met.  Plaintiffs Parente, Cash, Knight, and Yalung timely filed charges of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and cross-filled with the Wisconsin Department of Workforce Development ("WDWD"). GFS, the EEOC and the WDWD were placed on notice that Plaintiffs' Charges of age discrimination claims were filed on behalf of all persons similarly situated, and that collective and class litigation was contemplated.  Other terminated employees over age 40 who did not file charges within 300 days will "piggyback" on the charges of Plaintiffs Parente, Cash, Knight, and Yalung. The EEOC treated Plaintiffs charges as class/collective charges.  The EEOC issued Right to Sue letters on February 15, 2022.

## PARTIES

7.     GFS employed each named Plaintiff at its Osseo, Wisconsin facility for many years and in the job capacity noted. All Plaintiffs were over the age of forty (40) at the time GFS terminated their employment:

- Salvatore Parente, resident of Woodbury, MN; held the position of Executive Vice President of Sales when fired. Parente was then age fifty-one (51).

- Dane Cash, resident of Merrillan, WI; held a Customer Service position when fired. Cash was then age sixty-four (64).

- Bradley Knight, resident of Eau Claire, WI; held the position of Senior Project Manager when fired. Knight was then age fifty-four (54).

- Garry Yalung, resident of Eleva, WI; held the position of Manager of Electrical Engineering when fired. Yalung was then age forty-nine (49).

8.     For the purposes of this Complaint, the term "GFS" is intended to cover all legal entities that employed one or more of the Plaintiffs at the time of their termination, including the entities above-named and any and all divisions of the above-named entities.

9.     GFS is an employer within the meaning of the ADEA.

10.     Each Plaintiff named in the caption of this case has consented to become a party Plaintiff in this action and a class representative as appropriate.

## FACTS

### ADEA:  Rights and Claims

11.     The ADEA mandates that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such

individual's age," and it is also unlawful "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a).

12.     Congress also mandated that the ADEA is to be "enforced in accordance with the powers, remedies, and procedures provided in, "among others, Section 216(b) of the Fair Labor Standards Act of 1938, as amended.  29 U.S.C. § 626(b).  That section directs that aggrieved persons who are "similarly situated" are entitled to proceed together in one action.  29 U.S.C. § 216(b).

13.     The U.S. Supreme Court has held that, by incorporating 29 U.S.C. § 216(b), the ADEA "expressly authorizes employees to bring collective action age discrimination actions, on behalf of . . . themselves and other employees similarly situated." *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1998) (quoting 29 U.S.C. § 216(b)).

14.     The ADEA was amended in 1990 with the passage of the Older Worker Benefits Protection Act ("OWBPA"), which is codified at 29 U.S.C. § 626(f).

15.      The OWBPA provides, "[a]n individual may not waive *any right or claim* under this chapter unless the waiver is knowing and voluntary," and directs that a "waiver may not be considered knowing and voluntary unless at a minimum" it satisfies the requirements set forth at subsections (A) through (H) of 29 U.S.C. § 626(f)(1).

16.     The U.S. Supreme Court has stated that:  "The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word," and that "[t]he OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law."  *Oubre v. Entergy*

*Operations, Inc.*, 522 U.S. 422, 427 (1998).  In *Oubre*, the employee asserted a cause of action under the ADEA, and the Supreme Court held that "her release can have no effect on her ADEA claim unless it complies with the OWBPA." *Id.*

17.    Among the mandatory minimum requirements to obtain a "knowing and voluntary" waiver of "any right or claim" under the ADEA is that "the waiver is part of any agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate."  29 U.S.C. § 626(f)(1)(A).

18.    "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees," which occurred here when GFS terminated the Plaintiffs and others similarly situated in 2020, to obtain a "knowing and voluntary" waiver, the employer must inform the "individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to –

    (i)    any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

    (ii)    the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program."  (29 U.S.C. § 626(f)(1)(H).

19.    "If a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement."  29. U.S.C.§ 626(f)(1)(F)(ii).

20. The purpose of these informational disclosure requirements "is to provide an employee with enough information regarding the program to allow the employee to make an informed choice whether or not to sign a waiver agreement." 29 C.F.R. § 1625.22(f)(1)(iv).

21. An employer's failure to provide individuals age 40 or older who are asked to sign a waiver of age discrimination claims under the ADEA with accurate OWBPA disclosures renders the purported waiver ineffective with respect to claims and rights under the ADEA.

22. In the ADEA, Congress expressly delegated to the U.S. Equal Employment Opportunity Commission ("EEOC") authority to "issue such rules and regulations as it may consider necessary or appropriate for carrying out this chapter." 29 U.S.C. § 628. The EEOC has adopted regulations that further define the minimum requirements set forth in 29 U.S.C. § 626(f)(1) to obtain a "knowing and voluntary" waiver of "any right or claim" under the ADEA. These regulations are codified at 29 C.F.R. §§ 1625.22 & 23.

23. The regulations confirm that an employee who challenges whether a waiver agreement is "knowing and voluntary" under the ADEA "is not required to tender back the consideration given for that agreement before filing either a lawsuit or a charge of discrimination," and that "[r]etention of consideration does not foreclose a challenge to any waiver agreement," nor does it "constitute the ratification of any waiver agreement . . ." 29 C.F.R. § 1625.23(a).

**GFS's 2020 Group Termination**

24. In 2020, GFS terminated at least forty-one (41) employees, including Plaintiffs, ages forty (40) and older as part of GFS's centralized, top down plan.

25.     GFS's 2020 Group Termination was part of an overall, centralized plan to reduce headcount and rid itself of older employees.

26.     In the lead up to GFS's 2020 Group Termination, GFS's leaders frequently and unabashedly made statements expressing a desire to get rid of older employees and replace them with younger workers.

27.     For instance, in the lead up to GFS's 2020 Group Termination, GFS's Director of Human Resources, who reported to GFS's President, frequently and unabashedly made statements such as, "We need to get young talent in here",  "How do we get these old people to retire?" and "When do we start recruiting younger [employees]."

28.     Prior to a meeting with GFS leaders in 2019, GFS's Director of Human Resources circulated a document to upper-level management employees containing a list *of every GFS employee over the age of fifty (50)* with the directive that management identify "when we think they're going to retire" or "when we want them to retire."

29.     Later, during the leadership meeting attended by GFS's President and leaders, this list of all GFS employees over the age of fifty (50) was discussed.  One of GFS's upper-level management employees asked "Is this legal?" indicating GFS's awareness that its conduct of wanting to eliminate its older employees was improper and unlawful.

30.     In the lead up to the 2020 Group Termination, GFS's Director of Human Resources stated, "we need to get younger people in here with fresher ideas."

31.     GFS's process of evaluating aging staff and seeking ways to replace older workers with younger individuals continued throughout 2019 and 2020.  To facilitate this plan, GFS hired numerous younger individuals with the intention of using them to replace older workers.

32.     When the Covid-19 pandemic occurred in 2020, GFS opportunistically executed its plan to get rid of older employees and replace them with younger individuals. GFS's first step was to furlough older employees on or about April 28, 2020 while retaining younger ones. For instance, GFS had recently hired younger individuals in the same or substantially similar positions held by Plaintiff Knight (age 54) and Plaintiff Yalung (age 49).  Despite Plaintiff Knight and Plaintiff Yalung having considerably more experience than these younger new hires, GFS furloughed them but did not furlough the newly hired younger individuals.

33.     In a clear showing that the furloughs were a pretext for age discrimination, at the time GFS was preparing to implement the furloughs, GFS leadership determined that it did not intend to bring any older furloughed employees back to work.  GFS furloughed older employees knowing it intended to terminate their employment at the end of the furlough period. GFS's Director of Human Resources stated GFS "need[ed] to infuse youth into our organization."

34.     In addition to using furloughs as a pretext for terminating older employees, GFS pushed out other older employees by forcing them to take early retirement under the threat of termination.

35.     During the April 2020 furloughs and just prior to GFS's 2020 Group Termination, GFS's executive leadership team openly discussed how to avoid bringing the older, furloughed employees back to work.

36.     As part of its pattern or practice of age discrimination, GFS discriminated against employees ages forty (40) or older in terminations and hirings, and also with respect to job assignments.

37.     After first furloughing Plaintiff Cash (age 64), GFS terminated Plaintiff Cash in the 2020 group terminations but kept his younger, less experienced recently hired coworkers. Plaintiff Cash is aware of GFS hiring approximately six (6) to seven (7) younger individuals in the same Customer Service position he held.  GFS brought all of these younger employees back from the furlough.  Plaintiff Cash is the lone employee in the Customer Service Position who GFS selected for termination.

38.     GFS told Plaintiffs the reason for their terminations was that their jobs were being eliminated.

39.     Yet since the 2020 Group Terminations, GFS has posted and hired younger individuals to replace the older employees it terminated.  For example, when comparing GFS's job openings following the 2020 group terminations and the OWBPA disclosure list, there are numerous positions in which an employee over the age of forty (40) was terminated and for which a current position is available.  For instance:

| GFS Open Job Posting | Age(s) of Terminated Individual |
|---|---|
| Welder | 55, 51, 50 |
| Engineering Manager | 49 |
| Project Manager | 54, 48 |
| Machine Operator Lead | 48 |
| Customer Service Technician | 64 |
| Engineer | 57, 42 |
| Assembler | 61, 59, 57, 21 |

40.     The OWBPA disclosures given to terminated employees in the 2020 Group Termination show that over sixty-six percent (66%) of the employees terminated were age forty (40) or older and part of the age-protected class.

41.     Upon information and belief, at the same time GFS was getting rid of older workers, it was hiring and promoting younger persons.

42.     Upon information and belief, as part of its pattern or practice of age discrimination, GFS failed to consider Plaintiffs for open positions or transfer them to open positions for which they were qualified.

43.     The Plaintiffs are similarly situated to one another.  Each was employed by GFS, each was terminated in the 2020 Group Termination, each was age forty (40) or older, each was qualified for the position(s) each held and was performing their job duties satisfactorily, and GFS involuntarily terminated each from employment in 2020 as part of a pattern or practice of age discrimination carried out under its corporate initiative.  The Plaintiffs are also similarly situated to one another because GFS asked each one to sign a "Waiver, Release and Nondisclosure Agreement."

44.     Despite Plaintiffs' qualifications, GFS subjected Plaintiffs to adverse treatment in the terms, conditions and privileges of their employment and termination due to their age. Specific instances of adverse treatment, pattern or practice, and policy infected by age discrimination includes, but is not limited to, the following:

      a.     Terminating the Plaintiffs' employment;

      b.     Consciously deciding not to comply with the Older Workers Benefit Protection Act;

      c.     Taking responsibilities away from older employees and giving them to younger, less qualified employees;

      d.     Claiming to "eliminate" jobs that were not eliminated;

      e.     Terminating the employment of numerous other experienced and skilled older workers;

      f.     Hiring younger employees shortly before and after firing the Plaintiffs;

g.      Retaining younger employees with less experience and skills than older

employees;

h.      Using systemic, company-wide criteria and/or rankings that were subjective

and that evidenced ageism; and

i.      Excluding recently hired younger employees from the terminations.

### GFS's Release Agreement

45.     In connection with the 2020 Group Termination, GFS offered Plaintiffs and others

similarly situated  a "Waiver, Release and Nondisclosure Agreement" (hereinafter referred

to as "Release Agreement") that outlined GFS would pay them money in exchange for

their agreement to release "any and all claims" against GFS including age discrimination

claims under the Age Discrimination in Employment Act.

46.     In seeking to secure signatures on its Release Agreement, GFS, failed to comply

with the Older Workers Benefits Protection Act (OWBPA) 29 U.S. C. § 626(f) because

GFS did not provide the terminated employees ages forty (40) or older with required

information.  GFS's violations of the Act include, but are not limited to:

- Not providing the jobs titles and ages of those employees not selected for

termination (i.e., retained employees).

- Not providing the selection criteria/eligibility factors used to select the individuals

chosen for termination; and

- Not identifying the decisional unit.

Employers are held to strict compliance of the OWBPA.  Non-compliance in any respect

voids releases of the ADEA claims.

47.     The releases are invalid under the OWBPA, as to all signatories, because they were induced to sign the release by GFS's misrepresentations.  Plaintiffs and others terminated in the 2020 Group Termination were informed that their positions were being eliminated, but in fact, many of the Plaintiffs' positions were not eliminated.

47.     Plaintiffs' receipt and retention of benefits under the terms of the invalid release does not, as a matter of law, constitute a ratification of the release itself.  (*See, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998).

48.     Plaintiffs seek declaratory relief from this Court.  Specifically, Plaintiffs ask the Court to declare that GFS's failure to comply with the OWBPA and the regulations promulgated thereunder render the release invalid as against federal age discrimination claims, and that Plaintiffs may proceed in spite of signed releases.  This will facilitate the swift administration of justice.

## Circumstances of the Named Plaintiffs

### *Salvatore Parente*

49.     Plaintiff Salvatore Parente worked for GFS from December 2018 through September 17, 2020.

50.     As part of the 2020 Group Termination, GFS terminated Parente on September 17, 2020.

51.     At the time GFS terminated his employment, Parente was employed as an Executive Vice President of Sales.

52.     Parente was well-qualified for his position.  Parente has decades of experience, skill, and expertise in multi-channel distribution, an area in which GFS was deficient.  GFS recruited Parente and went to considerable lengths to induce him to come and work for

GFS, including creating a position for Parente and offering a variety of incentives. During the course of Parente's employment, he provided GFS with access to his skills, experience, and knowledge of multi-channel distribution in order that GFS could incorporate those operations and processes. GFS took advantage of and used Parente's experience and then terminated him with other older employees in the 2020 Group Terminations.

53. Parente reported directly to GFS's President. Because of his role, Parente was privy to leadership meetings and conversations.

54. Over the course of Parente's employment, Parente observed that GFS's leaders frequently made statements expressing a desire to get rid of older employees and replace them with younger workers.

55. In the lead up to GFS's 2020 Group Termination, Parente heard GFS's Director of Human Resources, who reported to GFS's President, make discriminatory statements based on age such as, "We need to get young talent in here", "How do we get these old people to retire?" and "When do we start recruiting younger [employees]."

56. Parente observed that prior to a meeting with GFS leaders in 2019, GFS's Director of Human Resources circulated a document to upper-level management employees containing a list *of every GFS employee over the age of fifty (50)* with the directive that management identify "when we think they're going to retire" or "when we want them to retire."

57. Parente observed that later, during the leadership meeting attended by GFS's President and leaders, this list of all GFS employees over the age of fifty (50) was discussed. One of GFS's upper level management employees asked "Is this legal?"

indicating GFS's awareness that its conduct of wanting to eliminate its older employees was improper and unlawful.

58.     Parente was age fifty-one (51) when GFS terminated his employment.

### *Dane Cash*

59.     Plaintiff Dane Cash worked for GFS for 22 years – from August 1998 through August 28, 2020.

60.     At the time GFS terminated Cash's employment on August 28, 2020, Cash was employed in a Customer Service position.

61.     Cash was qualified for his position and performed well.

62.     Cash was age sixty-four (64) when GFS terminated his employment.

63.     At the time GFS terminated Cash, it retained six or seven more recently hired and significantly younger employees in the same position he had held.

64.     Despite Cash's skills and experience, GFS did not offer to transfer Cash to a different position.

### *Bradley Knight*

65.     Plaintiff Bradley Knight worked for GFS from October 2016 through August 28, 2020.

66.     At the time GFS terminated his employment on August 28, 2020, Knight was employed as a Senior Project Manager.

67.     Knight was qualified for his position and performed well.

68.     Knight was age fifty-four (54) when GFS terminated his employment.

69.   In the months before terminating Knight, GFS promoted a significantly younger, less experienced individual to do the work Knight had been performing. In addition, when GFS furloughed Knight it did not furlough this younger, less experienced individual.

70.   GFS did not terminate this younger, less experienced individual in the 2020 Group Termination.

71.   Despite Knight's skills and experience, GFS did not offer to transfer him to a different position.

### Garry Yalung

72.   Plaintiff Garry Yalung worked for GFS from June 2018 through August 28, 2020.

73.   At the time GFS terminated his employment on August 28, 2020, Yalung was employed as the Manager of Electrical Engineering.

74.   Yalung was qualified for his position and performed well.

75.   Yalung was age forty-nine (49) when GFS terminated his employment.

76.   In the months before terminating Yalung, GFS replaced Yalung with a significantly younger, less experienced individual to do the work Yalung had been performing. During this transition, Yalung was required to train-in and assist the younger employee in performing his job duties.

77.   GFS did not terminate this younger, less experienced individual in the 2020 Group Termination.

78.   Despite Yalung's skills and experience, GFS did not offer to transfer him a different position.

## Count I
## Age Discrimination (Disparate Treatment)
## ADEA Collective Action

79.     Plaintiffs hereby incorporate by reference each and every allegation and averment made above as though fully set forth herein.

80.     This is a representative action under 29 U.S.C. § 626(b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiffs and other similarly situated persons who opt into this action by filing appropriate notice.

81.     As elsewhere more fully set forth in this Complaint, GFS engaged in disparate treatment and an unlawful pattern or practice of age discrimination that adversely affected Plaintiffs, and each of them, and other similarly situated former GFS employees in violation of 29 U.S.C. § 621 *et seq.*

82.     The disparate treatment and unlawful pattern or practice of age discrimination by GFS alleged herein constitutes a willful violation of the ADEA.

83.     Plaintiffs' charges of discrimination filed with the EEOC asserted claims on behalf of both the Plaintiffs themselves and others similarly situated, and adequately placed GFS on notice that a collective action would be forthcoming.

84.     Plaintiffs and others similarly situated were adversely affected by the disparate treatment and pattern or practice of unlawful, willful age discrimination by GFS as elsewhere described herein.  Plaintiffs and others similarly situated suffered actual damages in the form of lost salary and wages, bonuses, stock options, fringe benefits, retirement and insurance benefits, and other forms of compensation, as well as loss of career opportunity and advancement, costs of seeking alternate income, and in other

respects, all in amounts yet to be determined, but reasonably believed to exceed $1,000,000 per Plaintiff.

**Count II**
**Age Discrimination (Disparate Impact)**
**ADEA Collective Action**

85.     Plaintiffs hereby incorporate by reference each and every allegation and averment made above as though fully set forth herein.

86.     This is a representative action under 29 U.S.C. § 626 (b) and (c) and 29 U.S.C. § 216(b) by the above-named Plaintiffs and other similarly situated persons who opt into this action by filling an appropriate notice, and an individual action under the ADEA.

87.     As set forth more fully above, GFS has utilized practices, policies, and procedures that have disparately impacted former employees of GFS, resulting in an unlawful pattern or practice of age discrimination in violation of the ADEA, 29 U.S.C. § 621 *et seq.*

88.     The above-named Plaintiffs and others similarly situated were disparately impacted by GFS's practices, policies and procedures, in violation of the ADEA.

89.     Each of the above-named Plaintiffs has been disparately impacted by GFS's practices, policies and procedures, in violation of the ADEA.

90.     As a direct and proximate result of the aforesaid age discrimination by GFS, each of the Plaintiffs has suffered damages in an amount to be determined at trial, but reasonably believed to exceed $1,000,000 per Plaintiff, including, but not limited to, lost salary, bonuses, stock options, and other forms of compensation, lost retirement benefits, insurance benefits and other employee benefits.

**Count III**
**Age Discrimination (Disparate Treatment)**
**Individual Claims under the ADEA**

91.     Plaintiffs hereby incorporate by reference each and every allegation and averment made above as though fully set forth herein.

92.     GFS discriminated against each named Plaintiff herein because of his age in willful violation of the ADEA by engaging in disparate treatment, a pattern or practice of age discrimination, elsewhere described in this Complaint, and by terminating each Plaintiffs' employment.

93.     As a direct and proximate result of GFS's unlawful and willful age discrimination against them, each individual Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to, lost salary and wages, bonuses, stock options, fringe benefits, retirement and insurance benefits, and other forms of compensation, as well as loss of career opportunity and advancement, costs of seeking alternate income, and in other respects, all in amounts yet to be determined, but reasonably believed to exceed $1,000,000 per Plaintiff.

**Count IV**
**Declaratory Judgment**
**28 U.S.C. § 2201**

94.     Plaintiffs hereby incorporate by reference each and every allegation and averment made above as though fully set forth herein.

95.     An actual controversy of a judicial nature exists between Plaintiffs and GFS regarding whether the releases signed by Plaintiffs constitute valid waivers of Plaintiffs' age discrimination claims under the ADEA.

96.     A declaratory judgment with respect to the validity of the releases would terminate any and all uncertainty and controversy with respect to the rights of signing Plaintiffs to sue GFS for age discrimination under the ADEA.

97.     Plaintiffs seek the declaratory judgment of this Court, under the authority 28 U.S.C. § 2201, that the Severance Agreement and General Release of claims is invalid under the OWBPA for the reasons outlined in this Complaint.

98.     Plaintiffs further seek the order of this Court in compliance with precedent (*see, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998); and 29 C.F.R. § 1625.23) that Plaintiffs may assert their claims without returning cash benefits or suffering a discontinuation of other benefits during this case.

## Jury Demand

99.     Plaintiffs demand a trial by jury.

## Prayer for Relief for Counts I, II, III, IV

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against GFS as follows:

1.     Finding in favor of Plaintiffs and all those similarly situated that GFS violated the ADEA;

2.     Finding in favor of Plaintiffs and all those similarly situated that GFS willfully violated the ADEA;

3.     Permanently restraining GFS from ever again discriminating against Plaintiffs or any other individuals on the basis of that individual's age;

4.     Awarding each of the Plaintiffs and Opt-In Plaintiffs back pay and other appropriate compensation and benefits under the ADEA, together with interest thereon;

5.      Restoring each of the Plaintiffs and Opt-In Plaintiffs to positions comparable to those from which they were terminated or, in lieu of reinstatement, awarding each Plaintiff and Opt-In Plaintiff front pay and benefits under the ADEA from the period remaining until that person's expected retirement age;

6.      Awarding each Plaintiff and Opt-In Plaintiff liquidated damages pursuant to the ADEA in an amount equal to that person's back pay and benefits award, front pay and benefits award, together with interest thereon;

7.      Declaring that Plaintiffs are entitled to test the validity of the releases of age discrimination under the ADEA in a court of law without tendering back any benefits received, or suffering a discontinuation of benefits to be received, pursuant to said release, regardless of whether said release is ultimately determined to comply with the OWBPA. (*See, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998);

8.      Declaring that the releases of age discrimination under the ADEA presented by GFS to Plaintiffs and other similarly situated employees of GFS are invalid as a matter of law, that said releases were not and cannot as a matter of law be ratified, and that Plaintiffs and other Opt-In Plaintiffs who signed such releases are entitled to keep the benefits received and to continue to receive said benefits while pursuing rights under the ADEA. (*See, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998);

9.      Awarding attorneys' fees and costs as appropriate pursuant to the relevant statutes;

10.     Awarding prejudgment interest, costs and disbursement as appropriate herein; and

11.     Awarding such other and further relief as the Court and/or jury deems equitable, appropriate and just.

[SIGNATURE PAGE TO FOLLOW]

**TYLER W. BRENNAN LAW, LLC**

Dated:  March 23, 2022

/s/ Tyler W. Brennan
Tyler W. Brennan (#1091363)
T3 Building
323 Washington Ave. North, Suite 200
Minneapolis, MN  55401
Telephone:  (612) 351-0084
Facsimile:  (612) 354-4152
tyler@tylerwbrennanlaw.com

**BERTELSON LAW OFFICES, P.A.**

Dated:  March 23, 2022

/s/ Beth Bertelson
Beth E. Bertelson (PHV Pending)
Andrea R. Ostapowich (PHV Pending)
402 Union Plaza
333 Washington Ave. North
Minneapolis, MN  55401
Telephone:  (612) 278-9832
Facsimile:  (612) 340-0190
beth@bertelsonlaw.com
andrea@bertelsonlaw.com